Please call the first case in the morning. The case number 5-14-0528, St. Elizabeth's Hospital v. Workers' Compensation Comm'n. Counsel, you may proceed. Good morning. May it please the Court, Counsel, my name is Brendan Nestor. I represent St. Elizabeth's Hospital, the appellants in this matter. This case involves Catherine Bergman, who is employed as a registered nurse at St. Elizabeth's Hospital. On September 8, 2011, she underwent an unrelated surgery, a fusion of the L4-5 of the lumbar spine to treat a degenerative condition. Thereafter, she underwent a recovery process which involved two work conditioning evaluations. One took place on October 31, 2011. The second one took place on November 21, 2011. During those work conditioning evaluations, she complained of constant pain, was unable to lift greater than 10 to 15 pounds. Despite these findings, her treating physician, Dr. Yazdi, released her to work full duty on December 1, 2011. She still had constant complaints of pain. During that time, she worked for approximately six weeks at St. Elizabeth's Hospital. On January 13, 2012, she injured herself, having fallen from a chair and performing some work duties. Thereafter, x-rays were taken which showed malalignment of the vertebrae at L4-5. And she still had pain at the lumbar spine level radiating into her lower extremities. On June 28, 2012, Dr. Yazdi had to perform a second surgery, a reversion surgery, due to a nonunion that had formed at the L4-5 level. So you're not disputing there was the accident. She fell from the chair on January 13, 2012. You're maintaining, I believe, in the briefs that that particular accident was not the cause of her ill-being in the back. Is that right? That is correct. Medical evidence in this case boils down to the credibility issue of Dr. Yazdi versus the credibility of Dr. Kitchens, St. Elizabeth's Hospital's independent medical examiner. I think you've phrased it very well. So how do you win that battle under the general principle that it's up to the commission to judge the credibility of the medical evidence and the weight to be given to the expert opinion? The medical evidence should only be viewed if it's contrary to the manifest weight of the evidence. If there is a clearly evident, plain, and indisputable weight of the evidence compels the opposite conclusion, it should be set aside. Which, based on this case, Dr. Kitchens' testimony is credible and Dr. Yazdi's testimony is non-credible. The commission found the opposite, did it not? It did, Your Honor, but it did not give the appropriate weight as my client's position to Dr. Kitchens' testimony versus Dr. Yazdi's. If Dr. Yazdi failed to implement bone graft material at the fusion site, which is medical malpractice, if his testimony is to be believed, he would be committing medical malpractice. It cannot stand that his testimony is completely self-serving. That might make his testimony more believable, that he's admitting to medical malpractice. Well, he did. He said that the nonunion was simply caused by the fall. He did not. He did not. He said it was contributed to the fall. Dr. Kitchens, contrarily, says the nonunion was in place before the fall because of Dr. Yazdi's malpractice and not implementing bone graft material at the fusion site. Let's assume that what you say is true. Isn't there a body of law that says that you, the employer, takes the employee as you find them? How does that enter into the mixture? Of course, we do take it as we find it. However, there is no causation for the nonunion based on the fall. She did suffer an injury, a minor injury, which did not require the subsequent medical treatment and the award of total temporary disability, which the commission upheld the arbitrator's decision. She continued to work up until the surgery. There is no total temporary disability that should be awarded. Further, the medical treatment provided by Dr. Yazdi related to the second surgery of June 28, 2012, and thereafter, is not attributable to the work accident. So you're saying, in effect, the present condition of Ildane she's seeking benefits for, there was this intervening cause that broke the relationship between the original incident and her present condition? I mean, that's one way to look at it, is it? Is that what you're suggesting? It's solely based on the pre-existing condition that she's had being the nonunion based on Dr. Yazdi's malpractice. Which happened after the incident at work, correct? No. The surgery? The second surgery, yes, correct. The first surgery where the malpractice was committed, by not implementing the bone graft material, was on September 8, 2011, prior to the fall. The second surgery to correct the reversion and properly do the fusion was June. Well, how do you respond to this? There's evidence in the record that the claimant's condition improved. The condition did improve following the surgery. She returned to work, was able to perform all of her duties without any problems. Then she falls off the chair. So how are you saying that the fall off the chair had nothing to do with her condition when she had no problems prior to the fall off the chair? She did continue to have problems, Your Honor. She complained of constant pain, aching in the back. And Dr. Kitchen's testimony, when you have a fusion and have a cage implemented and hardware implemented at the fusion site, that is going to hold the spine stable. As the hardware starts to loosen, then you're going to have an exacerbation of symptoms. Her symptoms would have continued to exacerbate even if she didn't suffer the fall from the chair. Well, that's the conflict of the medical evidence, right? Yes. I mean, Yazzie didn't say that. Okay. I ask this Court to hold that there is no causal connection between the work injury and Dr. Yazzie's subsequent treatment and hold that the award of TTD should be disallowed. That's all I have. If the Court has any further questions. I don't believe there are. Thank you, Counsel. Thank you. May I respond? Good morning, Your Honor. May it please this Court, Counsel. My name is John Rosenstengel from Belleville. I represent Catherine Bergner, who is the petitioner-appellee in this matter. We respectfully request that this Court affirm the decision below, the decision of the arbitrator, the decision of the commission, and the decision of the circuit court, that this is not against the manifest weight of the evidence. Mainly, there's two reasons why we respectfully request that the Court affirm the decision. First, the treating doctor, Dr. Yazzie, was a pre-occurrence witness as well as a treater in this matter, and he offered substantial opinion testimony that was believed by all the levels below, and that's why this case should be affirmed. Second, no one else who reviewed the x-rays or reviewed any of the radiographic evidence in this case saw a nonunion such as was testified by Dr. Kitchens. That's critical. That's very important. Nobody indicated that the operation was a problem with the way the operation was done, then? Nobody else. Nobody else did. And what I find to be interesting is the fact that Dr. Yazzie was an employee of the hospital, too, and he's up here arguing it was malpractice for his own employee. I wish he had done that before the statute ran. Just kidding. I don't believe there was malpractice anyway. But Dr. Yazzie testified very credibly, and if you look at what happened here, in September of 2011, my lady had an unrelated posterior fusion. That's a different kind of fusion that was done later on. And then, after this accident, her symptoms were dramatically different, and Dr. Yazzie testified that, based on the injections that he did and the testing he did, she had issues at the facet joints, which was a completely new type of symptom. And because of those symptoms, he had to do an inner body fusion where he came in and approached from the side and put in a whole different type of fusion, a totally different type of operation. Well, after the first accident, she returned to work and was performing her normal duties, right? And that's why he was a pre-occurrence witness. He released her to go to work. He testified that he saw her on the operation floor, or on the operative floor, and that she was doing her job. She was able to do it. She was recovering from her prior surgery. He expected to have a complete fusion by 6 to 7 months, is what the medical evidence showed. And after this accident in January of 2012, he had a few visits with her, and then in May of 2012, he basically said in his records, my main hypothesis is that this fall disrupted the fusion process and was therefore the need for the surgery that took place in June of 2012, an inner body fusion, not the posterior fusion. And a lot of that's based because of the facet pain and the new symptoms she had after this accident, a completely different type of thing. Dr. Yosky was a treating physician as well as a pre-occurrence witness, and he's very credible. The arbitrator found that, the commission believed that, and so did the circuit court. Basically, it's a battle of the experts. They found Yosky credible. They adopted his opinion over Kitchen's, and that should be the bulk of it. That should be the bulk of it, but there's also further evidence that you need to look at, and that is these radiographs that Dr. Kitchen showed a halo and movement of the instruments, they were reviewed by Dr. Yazdi on several occasions, as well as Dr. Keys, who's a radiologist, and Dr. Barrows, who's a radiologist, and none of them mentioned anything about any malalignment, about any nonunion, or anything coming out of place. There is so much evidence in favor of this award that my argument is very short, and we respect the request that you affirm this decision. I will not take up any more of your time. Thank you. Thank you, counsel. Counsel, you may reply. Thank you both, counsel, for your arguments in this matter this morning. We will be taking their advisement at written disposition.